HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PROGRESSIVE INTERNATIONAL
CORPORATION,

        Plaintiff,

    v.

AMGTM LLC, and CUL
DISTRIBUTORS, LLC,

        Defendants.

CASE NO. C17-448 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Progressive International Corporation's ("Progressive" or "Plaintiff") Motion for Summary Judgment or in the Alternative for Default Judgment ("Motion"). Dkt. # 46. Defendants AMGTM LLC ("AMGTM") and CUL Distributors LLC ("CUL") have not filed an opposition.

As set forth below, the Court **GRANTS IN PART** Defendants' Motion. The Court enters summary judgment against AMGTM, and default judgment against CUL. The Court awards attorney's fees and costs to Progressive due to a finding of willful infringement. The Court also awards Progressive prejudgment interest, though not at the

rate Progressive requests, and instructs Progressive to calculate its interest using the methods described below. The Court also awards Progressive postjudgment interest. Finally, the Court dismisses with prejudice AMGTM's counterclaims.

## II. BACKGROUND

Progressive provides the following facts, which Defendants have not disputed. Progressive is the owner of U.S. Patent D494,427 ("the '427 Patent") for a splatter screen. Dkt. # 46-2. Images of the splatter screen from the '427 Patent are shown below, including Figure 1 (top perspective), Figure 2 (top plan) and Figure 3 (side elevational).



*Id.* Progressive also sells a commercial embodiment of the '427 Patent under the "PrepWorks" brand:



Dkt. # 46 at 4; *see also* Dkt. # 33 at p. 4, ¶ 10.  Progressive marked this product by stamping the '427 Patent number into the handle of the patent in the region adjacent the green band on the cardstock label.  Dkt. # 46 at 5-6.

Defendant AMGTM owns the Culina trademark.  Dkt. ## 46-8, 46-10.  Since 2015, Defendant CUL has imported and sold a splatter screen bearing the "Culina" trademark:



Dkt. ## 46 at p. 4, 46-3.  The Culina-branded splatter screen was advertised for sale at the website culinacollection.com and other online retailers. Dkt. ## 33 at p. 3, ¶ 6; 46-1 at ¶ 3; 46-3.  Both AMGTM and CUL are owned and/or controlled by Abraham Greenboim. Dkt. ## 46-5, 46-6.

On October 29, 2015, counsel for Progressive wrote to counsel for AMGTM, the owner of the Culina trademark as listed by the U.S. Patent and Trademark Office, to provide notice of the Culina splatter screen's alleged infringement of the '427 Patent. Dkt. # 46-14.  Progressive and AMGTM communicated further and attempted to reach a settlement, but could not agree on a resolution.  During this time, CUL continued to sell the accused Culina splatter screen, and AMGTM did not disclose the separate existence of CUL.  Dkt. # 46-1 at p. 3, ¶ 13.

Progressive then filed this lawsuit against AMGTM on March 21, 2017, alleging that AMGTM's Culina-branded splatter screen infringed the '427 Patent.  Dkt. # 1.

AMGTM defaulted, but the parties later agreed to set aside this default, and AMGTM answered, asserting two counterclaims for non-infringement and invalidity.  Dkt. ## 10-13.  During discovery, AMGTM provided minimal answers and documents, prompting Progressive to file multiple motions to compel, which the Court granted.  Dkt. ## 20, 24, 25, 45.  Moreover, two sets of counsel for AMGTM withdrew due, at least in part, to AMGTM's failure to follow counsel's advice regarding discovery and failure to pay.  Dkt. ## 21, 24, 38, 42, 45.

Eventually, Progressive discovered CUL's existence, and the parties stipulated to allow Progressive to file an Amended Complaint and add CUL as a defendant.  Dkt. # 32.  Progressive did so and served both AMGTM and CUL, but CUL defaulted.  Dkt. ## 33, 44.

As of April 19, 2018, both AMGTM and CUL are without counsel.  The Court ordered both AMGTM and CUL to obtain new counsel within two weeks of this date, but months have passed and neither defendant has done so.  Dkt. # 45.  To date, Defendants have failed to secure replacement counsel and are proceeding *pro se*, despite warnings that failure of the corporate Defendants to secure new counsel violates this Court's local rules.  *Id.*; see also Local Civil Rule 83.2(b)(3).  The Court explicitly warned Defendants that failure to secure new counsel may result in "sanctions."  *Id.*

On June 25, 2018, Progressive filed this Motion for Summary Judgment or in the Alternative Default Judgment.  Dkt. # 46.  Neither Defendant responded or otherwise opposed Progressive's Motion.

### III. DISCUSSION

1. <u>Summary Judgment Against AMGTM</u>

Progressive moves, in part, for summary judgment under Fed. R. Civ. P. 56.  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Neither Defendant opposes Progressive's Motion.  Ordinarily, "[i]f a party fails to file

papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rules W.D. Wash. LCR 7(b)(2). However, a district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir.1994).

A court considering an unopposed summary judgment motion is authorized to treat an assertion of fact from the moving party as undisputed. Fed. R. Civ. P. 56(e)(2). Once it does so, it may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3). The court cannot grant summary judgment "by default," it must instead "determine the legal consequences" of the facts it deems undisputed. *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir.2013). Ultimately, it will suffice if the court reviews the summary judgment motion and grants it on its merits. *Id.* at 917–18; *see also Bateh v. Wells Fargo Bank, N.A.*, No. C14-293RAJ, 2014 WL 3739511, at *3 (W.D. Wash. July 29, 2014).

a. Design Patent Infringement

"A design patent protects the non-functional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). A design patent is infringed by the unauthorized manufacture, use, or sale of an article that embodies the design or a colorable imitation of the design. 35 U.S.C. § 289; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 162 F.3d 1113, 1116–17 (Fed. Cir. 1998). A product infringes a design patent if the design embodied in the patent and the design of the product would appear to the "ordinary observer" to be substantially similar. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). In contrast to the court's task in resolving claims of utility patent infringement, design patent infringement does not require claim construction. *Id.* at 679. It suffices to provide a description of the claimed design that illuminates its comparison to the accused product.

1  *Id*. at 680.  Although the court's analysis may become detailed, involving comparisons of
2  prior art and discussions of design patent conventions, *id*. at 678, 681, a detailed analysis
3  is not always necessary. *Id*. at 678 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528
4  (1871)).  In any event, a court considers only the ornamental aspects of a design patent,
5  because design patents cannot cover purely functional aspects of a product.  *Id*. at 681.

6        The Court concludes that there is no genuine issue of material fact that the accused
7  Culina splatter screen infringes the '427 Patent.  The record establishes that AMGTM
8  owns the "Culina" trademark that is emblazoned on the accused splatter screen, and that
9  AMGTM uses this trademark in commerce for products like the accused splatter screen.
10 Dkt. # 46-8; *see also* Dkt. ## 25-6, 25-7.  The Court cannot find any difference between
11 the splatter screen design of the '427 Patent and the accused Culina splatter screen.  Both
12 designs reflect a single wire forming a handle while also extending beneath the mesh
13 splatter screen itself with integrated feet formed by bends in the wire.  Placed side-by-
14 side, the similarities between Progressive's commercial embodiment (left) and the Culina
15 splatter screen (right) are striking:






24 Dkt. ## 33 at p. 4, ¶ 10, 46 at 4, 46-1 at p. 2, ¶ 3, 46-3.  Even though the ordinary
25 observer test is one of overall similarity, the differences between the Culina product and
26 the '427 design are more than "mere difference of lines in the drawing or sketch ... or
27 slight variances in configuration." *Egyptian Goddess*, 543 F.3d at 670.  The two designs

do not reflect any differences at all.  To any "ordinary" observer, the designs would appear identical.  The Court is hard-pressed to imagine a more clear example of a product that would infringe the '427 Patent.

The Court also finds that the record establishes that AMGTM willfully infringed the '427 Patent.  "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id*.  As described above, Defendants had knowledge of the '427 at least as early as October 2015, and continued to manufacture, use, and sell the accused Culina splatter screen despite this knowledge.  In 2015, any reasonable observer could see that the Culina splatter screen and Progressive's '427 Patent splatter screen design were identical.  AMGTM and Progressive engaged in settlement talks while sales of the Culina splatter screen were ongoing, unbeknownst to Progressive, through CUL.  Dkt. #46-1 at p. 3, ¶ 13.  AMGTM and CUL therefore knew, or should have known, that they were selling the Culina splatter screen despite an objectively high likelihood of infringement.

Finally, AMGTM's counterclaims of non-infringement and invalidity are little more than boilerplate.  Dkt. # 13 at 5-7.  AMGTM's non-infringement counterclaims makes no specific argument for how the identical design of the accused splatter screen does not infringe the '427 Patent.  *Id*. at 5.  AMGTM's invalidity counterclaim does not identify any prior art or any other specific basis to find the '427 Patent invalid.  *Id*. at 5-6.  The Court can find no evidence in the record that supports either of AMGTM's counterclaims.  Moreover, given AMGTM's failure to secure new counsel as ordered by this Court and failure to provide any evidence supporting its counterclaims, the Court

finds that AMGTM's counterclaims should be dismissed with prejudice as a sanction for failure to prosecute and secure new counsel. In the Ninth Circuit, a corporation's continued failure to secure counsel justifies dismissal of its claims. *See, e.g., Ringgold Corp. v. Worrall*, 880 F. 2d 1138, 1142 (9th Cir. 1989) (upholding dismissal of affirmative claims and grant of default judgment on counterclaims after attorney withdrew and company failed to retain new counsel or appear for pretrial conferences); *see also United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that the district court's entry of default was appropriate where a corporate defendant failed to comply with an order to retain counsel for the duration of the litigation).

Accordingly, the Court concludes that there is no genuine issue of material fact as to AMGTM's infringement of the '427 Patent. The Court **GRANTS** Progressive's Motion for Summary Judgment as to Defendant AMGTM. Summary judgment is entered for Progressive and against AMGTM on Progressive's design patent infringement claim, including willful infringement, and AMGTM's counterclaims.

2. <u>Default Judgment Against CUL</u>

Progressive also requests that this Court enter Default Judgment as to Defendant CUL. Dkt. # 46 at 6. On March 28, 2018, the Court entered default against Defendant CUL. Dkt. # 44. Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Upon entry of default, the defendant's liability is established and the well-pleaded allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where those facts establish a defendant's liability, the court has discretion, not an obligation, to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The plaintiff must submit evidence supporting a claim for a particular sum of damages. *TeleVideo Sys.*, 826 F.2d at 917-18; *see also* Fed. R. Civ. P.

55(b)(2)(B). If the plaintiff cannot prove that the sum it seeks is "a liquidated sum or capable of mathematical calculation," the court must hold a hearing or otherwise ensure that the damage award is appropriate. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

The Court concludes that default judgment against CUL is appropriate. The allegations of the Amended Complaint, accepted as true, establish CUL's liability for design patent infringement. CUL sold and offered for sale the accused Culina splatter screen, which , as explained above, infringes the splatter screen design embodied in the '427 Patent. Dkt. # 33 at pp. 3-5, ¶¶ 6, 9-13. The Court also agrees that the allegations set forth in the Amended Complaint establish that CUL engaged in willful infringement of the '427 Patent, as CUL sold the accused splatter screen since with active knowledge of Progressive's '427 Patent since at least October 2015. Dkt. # 33 at pp. 5-6, ¶¶ 14-16.

CUL has shown no willingness to defend the merits of this case. Despite an Order from this Court directing CUL to obtain counsel, CUL has not appeared or otherwise made any attempt to defend itself. CUL apparently continued to sell the Culina splatter screen during the pendency of this case and has ignored this Court's orders that it obtain counsel.

The Court accordingly **GRANTS** Progressive's Motion for Default Judgment as to Defendant CUL. The Court enters default judgment for Progressive and against CUL on Progressive's design patent infringement claim, including willful infringement. The Court will consider below Progressive's evidence supporting a claim for a particular sum of damages.

3. Damages

Progressive seeks to recover as damages the "total profit" resulting from sales of the accused Culina splatter screen. Dkt. # 46 at 6-10. Under the Patent Act, defendants found liable for design patent infringement "shall be liable to the [patent] owner to the extent of his total profit, but not less than $250[.]" 35 U.S.C. § 289. Progressive submits

as evidence a financial spreadsheet produced by AMGTM that purports to detail $192,950 in net profits from sales of the accused Culina splatter screen.[1] Dkt. # 48-3. The Court concurs with Progressive that, based on the record, this figure represents the total profits attributable to sales of the accused Culina splatter screen.

Accordingly, the Court awards damages to Progressive in the amount of $192,950. Because AMGTM and CUL form part of the same distribution chain and appear to share common ownership, both Defendants shall be jointly and severally liable for this amount. "Courts in the Ninth Circuit" have "'held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain'" of allegedly infringing products can be "'jointly and severally liable'" for the alleged misconduct. *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) (quoting *Unicolors, Inc. v. Macy's, Inc.*, No. CV 14–08611–RGK SSX, 2015 WL 1020101, at *4 (C.D. Cal. Mar. 6, 2015)).

4. Attorney's Fees and Costs

In addition to damages, Progressive also requests that this Court award attorney fees and costs. Dkt. # 46 at 11. For patent cases, 35 U.S.C. § 285 states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court defines an "exceptional case" as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

---

[1] Progressive observes that the spreadsheet actually claims a negligible net profit by way of a massive and mysterious "Prorated CUL Expense" deduction that removed the vast majority of sales revenue from the profits calculation. Dkt. # 46 at 8-10. The Court has reviewed this spreadsheet and the remaining record, and agrees with Progressive that the "Prorated CUL Expense" deduction appears to be an accounting fabrication designed to reduce profits to nearly zero. There appears to be no logical basis or evidence explaining what this expense is or why it exists, despite Progressive's repeated attempts to unearth a rationale through discovery. *Id*. The Court will accordingly disregard this deduction in determining total profits.

was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* ⎯⎯ U.S. ⎯⎯, 134 S.Ct. 1749, 1756, (2014).

"Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less a high one." *Octane Fitness*, 134 S.Ct. at 1758. Where a moving party can show exceptionality by a preponderance of the evidence, the court may award attorney's fees. *Id.* "There is no precise rule or formula for making these determinations." *Id.* at 1756. The statute is inherently flexible, and district courts are to evaluate the totality of the circumstances and exercise their equitable discretion after considering factors such as frivolousness, motivation, objective unreasonableness, and/or the need to compensate or deter parties. *Id.* (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

The Court agrees with Progressive that this case is "exceptional." There is no question that any ordinary observer could easily tell that there is no discernible difference between the '427 Patent design and the Culina splatter screen. Infringement was clear from the very outset of AMGTM's corporate existence in 2015. Defendants knew about Progressive's '427 Patent for at least two years, but continued to market and sell the Culina splatter screen. Dkt. # 46-13. Defendants apparently used talks of settlement with Progressive as a means of stalling to avoid liability while it continued to infringe Progressive's '427 Patent. Dkt. # 46-1 at p. 3, ¶ 13. As Progressive notes, "[t]he Defendants simply ignored the patent with no meaningful defense, and continued selling until their inventory was exhausted." Dkt. # 46 at 12. When Progressive finally filed suit in 2017, AMGTM initially defaulted and refused to participate, only later submitting a boilerplate answer that made no mention of CUL.

The subsequent behavior of Defendants in this lawsuit indicate that they had no intention of participating in this litigation in good faith. Two sets of counsel for

AMGTM withdrew due to AMGTM's failure to heed advice on participating in discovery and paying legal bills. Dkt. ## 21, 40. AMGTM purposefully redacted discovery identifying CUL and concealed CUL's identity from Progressive for months, even though the two companies appear to originate from the same ownership. Dkt. ## 25, 46-5, 46-6. Although AMGTM eventually produced some financial records for CUL, the record reflected a large and unexplained deduction of the Culina splatter screen sales revenue in an apparent attempt to mask CUL's profit margin. Dkt. ## 48-2, 48-3. Finally, even after an Order from this Court directing both Defendants to obtain counsel or face sanctions (Dkt. # 45), Defendants failed to do so, and failed to defend this case on the merits.

Despite knowing of Progressive's '427 Patent for years, neither Defendant has ever made any credible argument of non-infringement or invalidity. Instead, Defendants have engaged in corporate shell games, stalling tactics, litigation misconduct, and ignorance of ongoing legal proceedings. This level of deception, recklessness, and willful blindness is emblematic of the type of "exceptional" cases permitting enhanced damages. *See, e.g., Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317CV00466LABNLS, 2018 WL 2328471, at *11 (S.D. Cal. May 23, 2018), *supplemented*, No. 317CV00466LABNLS, 2018 WL 2948532 (S.D. Cal. June 12, 2018), and *report and recommendation adopted*, No. 17CV466-LAB (NLS), 2018 WL 3032585 (S.D. Cal. June 19, 2018), and *report and recommendation adopted*, No. 17CV466-LAB (NLS), 2018 WL 3032585 (S.D. Cal. June 19, 2018) (finding "exceptional" case where defendant defaulted and "refus[ed] to participate in litigation" while still selling and marketing products); *ROAR, LLC v. ROAR Glob. Ltd.*, No. 215CV05865ODWAFM, 2016 WL 7115902, at *7 (C.D. Cal. Dec. 5, 2016) (finding "exceptional" case where defendant did not comply with court order to obtain new counsel and defaulted).

Having found that this is an exceptional case within the meaning of Section 285, the Court must now consider whether the requested fees are reasonable. *See Forest*

*Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327-28 (Fed. Cir. 2003). An attorney's fee award under Section 285 must bear some relation to the extent of the conduct responsible for the court's finding of exceptionality. *Cartner v. Almo Grp., Inc.*, 561 Fed. Appx. 958, 963 (Fed. Cir. 2014).

Here, Progressive requests $37,240.50 in fees and costs. Dkt. ## 46-16. The Court has reviewed Progressive's submitted hourly rates and time entries, and finds that this amount is reasonable. The Court thus awards this amount in full.

5. <u>Prejudgment and Postjudgment Interest</u>

Progressive also requests prejudgment and postjudgment interest as part of its damages award. Dkt. # 46 at 13-14. Under 35 U.S.C. § 284, district courts have considerable discretion in awarding prejudgment interest. *Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969 (Fed. Cir. 1986). The purpose of prejudgment interest is to "compensate[ ] the patent owner for the use of its money between the date of injury and the date of judgment." *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed. Cir. 1996). Such interest is usually awarded from the date of infringement to the date of judgment. *Nickson Indus. Inc., v. Rol Mfg. Co., Ltd.,* 847 F.2d 795, 800 (Fed.Cir.1988). Further, "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award[.]" *Gen. Motors Corp. v. Devex Corp.,* 461 U.S. 648, 657 (1983) (holding that an award of prejudgment interest is generally appropriate after a finding of patent infringement). The rate of prejudgment interest is also left to the wide discretion of this Court, which may award interest at or above the prime rate. *Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 939 F.2d 1540, 1545 (Fed. Cir. 1991).

The Court agrees that Progressive is entitled to prejudgment interest. The question then turns to the appropriate interest rate to apply. Progressive asks the Court to apply a 12% rate of prejudgment interest to be applied to CUL's profits from 2015 onward, thus seeking $23,251.50. Dkt. # 46 at 13; Dkt. # 48-3. Plaintiff relies first on RCW 19.52.010; however, this statute applies to consumer leases, not patent cases. Plaintiff

also relies on RCW 19.52.010, but does not cite authority applying this state statute to patent cases. Federal courts commonly use the prime rate to calculate prejudgment interest for patent infringement. *See, e.g., Uniroyal, Inc. v. RudkinWiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (awarding prejudgment interest at prime rate); *see also Junker v. HDC Corp.*, No. C–07–05094–JCS, 2008 WL 3385819 at *6 (N.D. Cal. July 28, 2008) (using the prime rate for the years 2004 through 2007 to calculate prejudgment interest). This Court has previously rejected the 12% rate proposed by Progressive and accepted the prime rate as the appropriate rate. *See Radio Sys. Corp. v. Lalor,* No. C10-0828RSM, 2014 WL 7040947, at *2 (W.D. Wash. Dec. 11, 2014) (rejecting 12% rate and applying prime rate). The Court finds that the prime rate is appropriate here.

Accordingly, Progressive is directed to calculate prejudgment interest on the profits earned by CUL in each separate year from the date of infringement through the date of judgment, using the simple, annual prime rate for each year**. Progressive must then file a supplement with the Court containing this computation within twenty-one (21) days of this Order**. Additionally, the Court also finds that given Defendants' behavior in this lawsuit, Progressive is also entitled to postjudgment interest pursuant to 28 U.S.C. § 1961.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Progressive's Motion. Dkt. # 46. The Court **GRANTS** Defendants' Motion for Summary Judgment as to AMGTM and **GRANTS** Plaintiff's Motion for Default Judgment against CUL. The Court awards damages to Progressive in the amount of $192,950.00, for which AMGTM and CUL are jointly and severally liable.

The Court also awards attorney fees and costs to Progressive, payable joint and severally by CUL and AMGTM, in the amount of $37,240.50.

The Court awards prejudgment interest to Progressive, and Progressive is instructed to compute this amount using the prime rate, compounded annually and file

this computation in a supplement **no later than twenty-one (21) days from the date of this Order**.

The Court will also award Progressive postjudgment interest pursuant to 28 U.S.C. § 1961 at the federal judgment rate set by statute until fully paid.

Finally, AMGTM's Counterclaims are **DISMISSED WITH PREJUDICE**. Dkt. # 13.

Dated this 21st day of August, 2018.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge